Sarah Kalman, D.L.A. Piper, Plaintiff Appellant Thomas Eugene Creech I intend to reserve approximately seven minutes of time for my rebuttal. Seven minutes. Yes, sir. Yes, Your Honor. The issue before the Court today is a narrow one. The District Court's sua sponte dismissal of Mr. Creech's claims should be reversed. Mr. Creech should have been given the opportunity to amend and reallege the claims asserted in his complaint, and those amended claims should be fairly considered on their own merits. Mr. Creech is a death row inmate in the State of Idaho. He has been seeking information from the State regarding plans to execute him for nearly five years. He first filed suit in March of 2020, asserting claims relating to the lack of information, the inadequacy of information provided, and the practices of the State with regard to withholding information. The claims were dismissed as unripe by the District Court. On appeal, this Court held that they were ripe, but some claims were moot, and under this Court's understanding of the allegations. This Court then remanded the case for further proceedings, including to allow amendment of the complaint to reallege Mr. Creech's claims in light of the Court's perceived deficiencies and changes in fact. Counsel, as you stand here today, which claims, in your view, can be amended to state a viable cause of action? We believe that most, if not all, claims can be amended to state a viable action. We understand that some of the claims were found to be moot based on changes in fact. There are, of course, additional facts that can now be alleged that may support those same claims under a similar onus of fact, but with some changed circumstances that could revive them. Even in view of the fact that there now is a revised policy, you still think that all of those claims are viable? Standing here today, speaking to a hypothetical amended complaint, it's difficult for me to be able to say exactly what those legal theories and facts would be. Well, but that's what you're asking us to give you the opportunity to do, so it would be helpful if you could articulate which claims now could be amended so as to survive a motion to dismiss. And you know what our prior opinion was regarding some of those claims, and so I'm curious as to how you feel that those claims that we thought had dubious value could be salvaged. I understand, Your Honor. Many of the claims were interpreted as relating solely to a pure lack of information because the prior standard operating procedure stated back to 1998. During the pendency of the prior appeal, there was a new standard operating procedure issued. That operating procedure is likely to change yet again due to changes in Idaho law, due to the enforcement of those procedures being suspended after Mr. Pizzuto's latest death warrant. So, counsel, let me follow up on Judge Rawlinson's question, and then maybe you can answer it more completely. I'll just give you one example, and I apologize if I have the claim number wrong, but what I had written down here as Claim 7, a violation of separation of powers in the Idaho Constitution. Do you think in light of our prior opinion that you should be allowed to amend that complaint, that claim? That claim was not found to be unripe or moot. It was held that it needed to be realleged with supplemental jurisdiction. There may be changes in the law that affect how that claim is pled. More specifically, though, if the Idaho courts have said that this is not a constitutional violation, how could that be amended to state a separation of powers claim under the Constitution that's been interpreted by the courts there? That is something that I would need to brief separately and completely under a set of amended facts that, as of right now, are only hypothetical and not before me or the court, nor were they before the district court. But, counsel, you knew this was your argument, that you should be allowed to amend, and so the fact that you can't come up with an amendment to that kind of supports our prior inclination that there was no way that this claim could be amended to state a plausible cause of action. As I understand our request today, it is a purely procedural one, that although there were concerns with the claims, there should have been the ability to amend them and brief them on their own merits. Well, part, I see part of our obligation is to be, the district court did not make a determination of whether or not it would be futile to amend, but we can make that determination as to whether or not it would be futile to allow amendment. And so it would be helpful for us to know if there is some basis for letting that claim go forward. I'm just speaking for myself, but that's kind of how I'm looking at the way we are viewing this case at this juncture. I understand, Your Honor. As we view the issues on appeal and the issues that were before the lower court on remand, at the time that they were enforced, it was a procedural issue, and the merits had not yet been considered because there had been no amendment. The issue we bring before the court today is whether the amendment should be allowed at all, as was instructed. You know, counsel, I have to say my inclination is very similar to Judge Rawlinson's, is that I viewed what we were here to discuss in large part was what currently you thought was viable, such that if we were going to rule in your favor in some way, we would be letting some go and not letting some go, as opposed to the district court did something wrong, so we're going to send it back, and you get to allege everything in the world that you want to allege. That's what you're asking us to allow, right? The district court limited any new claims specifically to new claims asserted against the new standard operating procedure. The original claims were broader than that. They were broader than a pure operating procedure that might have given some information. Instead, they concerned the practices, the patterns, the policies, the way that the procedures were drafted and enforced, the way that they were communicated, the depth that the information provided. This is broader than a single standard operating procedure, and that's why the claims needed to be realleged, not just new claims asserted against the new standard operating procedure, but to allow us to further flesh out the information behind why we felt that really all of these claims needed to be fully briefed once additional facts had been marshaled in order to allege them in the complaint. But, counsel, we're starting from the complaint that was in existence, and the question is whether or not we should allow that complaint to be amended. We're not starting from the premise that you get to do a completely new complaint. And so it seems to me that we should look at the claims that were presented and then see how those claims can be amended, as opposed to just saying that there should be a kind of general ability to start a new claim. Procedurally, that's not where we are. Correct, Your Honor, and that's why we filed the appeal, because under the district court's ruling, that's where we were. The district court's ruling prevented any evaluation of the claims as they then existed and moved us into a place of requiring us to start fresh with only the new claims. That's why we viewed this as a procedural issue and not one where we are here to debate the merits of hypotheticals. No, it's not the merit, but the merits, the procedural issue is whether or not amendments should be allowed. So, to me, it would be helpful if claim by claim we were able to determine if amendment would be futile. And I'm getting the sense that you're not prepared to do that. I'm sorry, Your Honor, that was not what we anticipated the nature of the appeal or the request to be, was to take a claim by claim evaluation of what the hypothetical amendments would be. It was rather the right to amend at all. We did not view the appeal to be based on the doctrine of futility or based on, you know, a 12B6. But that's the question. When you're asking to amend, the question becomes whether or not leave to amend should be granted. And if it would be futile to amend, then the leave is denied. That's all part and parcel of the inquiry. If the original appeal had been evaluated under a 12B6 denial, that might be the case. Instead, it was a 12B1 issue about ripeness. And because this Court's earlier opinion was limited to issues of ripeness and mootness, it instead questioned the viability of the claims but instructed that they should be able to be amended nonetheless. And because the distinct ruling was based on a 12B1 violation that would not have been with prejudice, for the Court to take that mandate and transform it into something that was dismissed with prejudice is the nature of what we believe was improper and why that particular opinion needed to be overruled and the case remanded for proceedings that were consistent with this Court's earlier opinion. So how would you have us rule? How would we word our order to the district court in your view? The order would be similar to the prior order but clarify that the right to amend is not a suggestion but rather was part and parcel of this Court's order. Well, consistent with that, we made some observations about which claims had potential merit and which claims we thought were likely to not have merit. So what do we do with that part of our prior ruling? So, again, those were, as we understood them, were advisory to aid us in how these claims might be amended. And that's what we were asking you. How would these claims be amended in view of those advisory, in your view, that advisory language that was in the prior appeal? Because in my view, I don't necessarily relish this case going down again and then coming up here again. I would like to get some finality to what the issues are and which claims are viable. Instead of us sending it back in a blanket manner and then it going back to the district court and the district court opining on that and then it coming back to us. I think we could expedite this by definitively saying whether certain claims are futile at this point or not. I understand, Your Honor. The issue is that that is not the nature of the appeal that was filed. Those claims have not been briefed before the district court. They have not been briefed before this court. It's difficult to... Well, but the district court had the sua sponte ruling and then you filed a fairly extensive motion for reconsideration, which the district court ruled on. And the state took the position that these claims were, in fact, not viable and barred. So those issues were before the district court. And if, in our view, they are before us, then they're before us. The claims were only before the district court because the district court misconstrued this court's holding. It specifically said that this court, quote, ultimately held that none of the claims are viable. That is not how we read the opinion. We did not read that guidance to be a holding of this court that found the lower court as the lower court found it. You know, we have provided some facts that might be marshaled, but we have not done a comprehensive listing of those facts. We have not been able to get to the point of realleging new facts or theories that would allow a full and thorough evaluation of those claims. Let me ask a question. Given that you're here now and that both of my colleagues seem very interested in knowing how you would amend your complaint, how long would it take you to file a supplemental brief answering their questions? I believe we could commit to doing that within a week to 10 days, Your Honor. Okay. Thank you. You wanted to reserve seven minutes for a bottle? I would. If there are no other questions, I'd like to reserve my time. I have one other question, Judge Gould. In addition to the judicial changing focus, you had asked us to take judicial notice of a number of things, including this November 16th, 2022 email suspending implementation of 135.02.01.001. Yes, Your Honor. And I'm going to ask your friend this question, too. To your knowledge, has anything changed with regard to those procedures and protocols since the November 16th, 2022 email? Although the procedures and protocols themselves have not changed, the law in Idaho has changed such that it would require further revision of the protocols. Namely, the state has enacted a law permitting a firing squad, which inherently changes the posture of not only our claims, but also the content of the operating procedures once they reissue them, likely in response to Mr. Pezzuto's next death warrant. But nothing has been issued anew that you're aware of? That's correct, Your Honor. All right. Thank you. Thanks, Counsel. Can we next hear from Mr. DeWalt? Mr. DeWalt, the Deputy Attorney General from the State of Idaho. Mr. DeWalt, please proceed. Thank you. May it please the Court, Mr. Creech is asking the Court. Could you state your name for the record, please? Sorry, Theo Wool, the Solicitor General for the State of Idaho. The appellant is asking the Court to allow him to amend his complaint, but he was afforded that opportunity previously, not once but twice, by the District Court on remand, and he chose on both occasions not to do so. The relief Mr. Creech was offered is now the relief he seeks from this Court, obviously without qualification. Mr. Creech believes he's entitled to this relief because he interprets the Court's mandate as a requirement that the District Court not merely allow him to seek amendment, but affirmatively permit amendment without engaging even in a futility analysis. It is hard to fault the District Court for not reading the Court's order in the way that it did. This Court did engage with the merits of Mr. Creech's claims, even if it was just a preview, and concluded that potentially none of them were viable. Well, the issue is potentially. The problem is that the District Court treated them as definitively not having any merit without further discussion of them. That's the difficulty I'm having with the way the District Court read the mandate and applied the mandate. I think we anticipated that the District Court would look at what we had pointed out as perhaps some of the shortcomings and then flesh it out more with the parties to see whether or not there could be amendments so that it would not be futile. Understood, Judge. And I think if we take the sui sponte dismissal on May 17th, that's probably lacking sufficient exposition of what analysis you already provided in dicta. I wouldn't say it's dicta. Fair enough, Your Honor. You put a lot of work into it, so I hate to do a lot of work and then somebody just discounted it's dicta. Fair enough, Your Honor. I think, though, when he returned to the matter on June 2nd, as the District Court himself said, it was, as a question of fairness, prudence and justice, it's essential to provide the appellant the opportunity either to move for reconsideration or to allege new claims. I think at that point, then, those two operating together, the 17th order and then the June 6th order, is really where the Court engages in a full futility analysis. All right. So let me ask a similar question to the one I asked your friend, but about a different claim. So as I understand, one of the things appellant wants to assert is a First Amendment claim to permit witnesses to view the insertion of the I.V., access the execution chamber, observe the entire execution. I don't believe we ever opined on that. I think that's a claim they've said they want to assert. Why shouldn't he be allowed to assert that claim? I mean, I think it was our view that that claim is foreclosed by circuit case law in First Amendment, and I think there was some considerations whether or not it could be presented anew. And again, I would repeat, the opportunity was presented by the district court for the appellant to present those arguments as they pertain to the new protocol. So with whatever constitutional amendment there was a claim that supported it, why wouldn't he be able, as a substantive matter, be able to have witnesses view the insertion of the I.V., access the execution chamber, observe the entire execution? Why wouldn't he have the right to have that? I think the view from the Idaho Department of Corrections on this question of allowing certain witnesses into the facility or the use of cell phones, cameras, et cetera, is a prudential safety and security question. Okay, take away the cell phones and the cameras. What about actually witnessing the execution, including the insertion of the I.V. lines? Your Honor, I think I would hesitate to opine on the particularities of that question in specific. If that's something you all would like from us, we're happy to provide supplemental jurisdiction on that. I thought you said it was foreclosed by our precedent. Only insofar as the district court's decision, what he relayed on the 17th and also on the 2nd, it was his view that the circuit's precedent foreclosed that asserted right. The counsel. I have a question for you. Yes, sir. Similar to the one I asked Ms. Coleman. If the panel were to decide that we're going to permit a breach through Ms. Coleman to file a supplemental brief, she said that could be done by the appellant within a week to 10 days. So basically I have a question for you. If, in fact, we decided as a panel to permit that to be filed by appellant, how long would it take you to provide a response of the State of Idaho? We could do it shortly thereafter, seven days. There's no need to drag this out. Okay, thank you. I do want to just return to something that opposing counsel said in her colloquy with you, Judge Rawlinson, which is this return to, as she said, a hypothetical complaint. She can't opine on that or a hypothetical amendment to the original complaint. And that's the difficulty that the State of Idaho has currently, which is we're asking to evaluate the merits or the demerits of a hypothetical complaint. It would have been far more easier for this court and obviously for the district court if the appellant had just proceeded with an amendment as it regarded to the new protocol. I understand that opposing counsel says that, well, the issue is that it's broader than the original protocol. There are issues that go beyond that. But I think even still the district court afforded Mr. Creech the opportunity to raise those claims insofar as there were new facts or new theories to support them as they related to the new protocol. When the district court allowed Creech to address that, was Creech then represented by counsel? My understanding is yes, sir. Yes. So with regard to execution protocols, you're familiar with the November 16 email I asked your friend about? Yes. And you have no objection, I think, to our taking judicial notice of that? No. So where are we now? So Idaho, the state legislature has enacted an alternative. The firing squad. The firing squad. But as I understand it, there's discussion going on about building some sort of chamber or facility, but nothing has been promulgated. Is that right? No. As far as the Office of Attorney General is aware, there has been no rulemaking, no new regulatory undertaking by the Idaho Department of Corrections to implement this new law. Oh, I mean, one of the claims they wanted to make under Claim 4 was a due process claim. And, I mean, we now know, for example, that very shortly before Mr. Pizzuto's execution, date last year, the procedures were basically just suspended. Why shouldn't we allow them to at least take a shot at a due process claim on the basis of, well, you know, there are these procedures, but they can be suspended. We have an example of suspending, and it just doesn't give us fair notice of what is or isn't going to happen and allow the state to come back and explain to the district court why that's either not viable or why you're entitled to summary judgment. Why, given the deviation, shouldn't we allow, for example, this kind of due process claim? It's a fair question, Judge. And, obviously, the circumstances revolving around Mr. Pizzuto's sort of process and journey through the protocol came with some complications. I think, though, when you look at the claims in total, the nine claims, it was always the view of this court, and I think the district court as well, that Claim 4 and 5, those that were sort of demarcated as partly moot, but given the theory that may be brought, could have some viability. I think that may still be the case. I don't know what Mr. Creech might present to ensure that there is a colorable claim there, and if he had pursued the proffered proposition from the district court, we would be in a better position to judge the viability of that claim. But doesn't that militate toward allowing amendment if there is some, if we can't say definitively that amendment would be futile? Doesn't that militate toward remanding for the opportunity to amend that claim? I think the difficulty here, Judge, is we are almost stuck in an unending tautology here. We're going to keep coming back and forth, in part because, as opposing counsel said, well, this is broader than the original protocol. It's broader than the original claims that we alleged. So there's the real possibility that the district court will perform its analysis, it will go back up, and we will still be in this realm of... Respectfully, counsel, and asking a follow-up to Judge Rawlinson's question, if there were new protocols, promulgated or amended protocols, there's nothing to stop appellant from filing, even if we agreed with you on everything. There would be nothing to stop appellant from filing a new lawsuit based on new protocols. And if you agree with that, wouldn't there be some benefit to our court defining what now appears to us to be viable, as opposed to just closing the book on everything and waiting for some new lawsuit at some point in the future to start everything all over again? Potentially, Your Honor. Unfortunately, however, new claims deserve new suit. There have been changes because of the extenuated timeline here. Changes in law, changes in the procedures. If the appellant wants to bring new claims, he should file a new claim. And I would just reiterate, it's our view that the district court offered Mr. Creech the opportunity to amend as it related to the new protocol, and it was his strategic decision not to avail himself of that proffer. If there are no further questions, we... Counsel, where in the record is the offer to Mr. Creech to amend? Was this after the remand? So, sorry, one more time, Judge. Was it after the remand from this court that the opportunity was given? Where is that in the record? So on the May 17th order, the district court offered, nevertheless, Pizzuto and Creech may amend their amended complaint to state claims related to the now-existent execution protocol if they wish to do so. What does that mean, though? Does that mean that all of the claims that were in the prior complaint are foreclosed, and in essence, there would have to be a new action? I think the way that, look, putting myself in the shoes of the district court, I think the way he read the mandate issued by this court was that it was not an unfettered right to amend. In the language of the mandate that you offered, in fact, you said, as it relates to the ripe claim. So contrary to what counsel offered here today, not all of the claims that you had demarcated as moot, those were set aside. And so I think the district court wasn't saying, look, your original claims are all foreclosed. Now argue them as they relate to the new protocol. I'm not sure that's clear from that language, in all fairness. I think, in essence, that order could be read as saying, take the new procedure and start from there and see what claims you have, as opposed to, to me, it would have been clearer if the court had said it would be futile for you to amend claim one, claim two. That would be more helpful to us in terms of trying to resolve what the court did and why. I think that's a fair observation, Judge. But remember, something that's a bit elided in the filings from opposing counsel is the May 17th order was operating on a very attenuated timeline. He was trying to be respectful to Mr. Pizzuto's imminent resolution, including death warrant. So that's why he then comes back on the June 2nd order and offers a new, the proper and more, I quote, the proper and more efficient, just and prudent course of action is for Mr. Creech to have time to file an amended pleading for any claims he would like to assert. Creech may assert any new claims or he may file a motion to reconsider as to why the court should allow him to amend any of his nine original claims that were dismissed without leave to amend. That's a fair point. And I think if there was a defect in the May 17th order, and still keeping in mind he was trying to comply with rule one of Fed procedure, he cured that defect with the June 2nd consideration. If there are no further questions, we'd ask that the court affirm the district court's rendering of the mandate. And thank you for the consideration. I believe that your, your honors have well presented many of the issues that we have with the order of the district court. Although counsel notes that Mr. Creech had the opportunity twice on remand to amend a complaint, he again mischaracterizes the nature of that amendment. In the first order of May 17th, the court explicitly stated, quote, the original nine claims are dismissed and may not be amended. When allowing amendments to the complaint, those amendments would only be to assert new claims as to the new standard operating procedures. Now, if there was a change, granted that the district court later noted that that order was made in haste, and so gave the opportunity to amend and assert new claims, or to file a motion for reconsideration. If there is a misunderstanding because the language of the district court was unclear, we made our position known in the motion for reconsideration. We clarified how we understood the court's order to be construed as to asserting new claims, as opposed to amending and reelecting those claims. We also clarified that the district court was not correct in alleging the prior claims, yet if such a misunderstanding occurred, it was never corrected by the district court. Instead, the district court quickly dismissed the claims with prejudice. Now, one of the key issues that we have here is that any of those new claims would have to be wholly new. They would not be based on the, as counsel and I have clarified, the larger onus of fact that generated these claims to begin with. The issue with dismissing those claims with prejudice is that those claims would be precluded. We would not be able to assert those claims, not just based on the standard operating procedures, but the wider factual background against which those procedures appear, because those claims would be precluded. That is why it is so important that they be allowed to be amended and realleged. Furthermore, this court's prior opinion, considering the viability of the claim, looked at various factors. It looked at the facts that had been asserted and analyzed those claims as it understood them. Without briefing, at this court, although I understand briefing may have been considered from the district court. However, additional facts that now exist that could be alleged would further support the existence of these claims and counter the understanding of this court's prior opinion, which at this point was issued well over a year ago. For example, this court noted that there was no allegation that the Idaho's prior procedures injured anyone. New studies that have been done on autopsies on various lethal injection inmates have found that there may have, in fact, been harm done because of fluid in the lungs. These are the types of facts that we are continuing to marshal that would further buttress the claims that are being asserted. This is why the existing facts and theories and the existing complaint need the opportunity to be fully realleged, fully investigated, and fleshed out for the consideration of the district court and, if necessary, this court. If there are no further questions, I will yield the remainder of my time. If there are no questions, we thank you. Then this case shall be submitted. I want to give special thanks again to Ms. Coleman and Mr. Wald. These death penalty cases are very stressful for the court and for the advocates. And we appreciate your advocacy today. Thank you very much. Without further elaboration, the Creech case shall now be submitted and the parties will hear from us in due course. And if the panel decides to permit a supplemental brief, address the panel. If you are noticing any questions raised at argument, we will let you know. Thank you. Thank you.
judges: GOULD, RAWLINSON, BENNETT